**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------ X

MARK VENSON, on behalf of himself and all    :
similarly-situated employees,                :
                                             :        Civil Action No.
                           Plaintiff,        :
                                             :        **CLASS ACTION COMPLAINT**
             v.                              :
                                             :        **Jury Trial Demanded**
PRO CUSTOM SOLAR LLC d/b/a                   :
MOMENTUM SOLAR, ALEX SHEIKH,                 :
ADAM GUGINO, JEFFREY ANCLIEN and             :
BRIAN ALPER, in their individual and         :
professional capacities,                     :
                                             :
                           Defendants.       :

------------------------------------------------------------ X

Plaintiff Mark Venson, by and through his undersigned counsel, Wigdor LLP, hereby

alleges as follows:

## PRELIMINARY STATEMENT

1.      Earlier this year, Defendant Pro Custom Solar, LLC d/b/a Momentum Solar

("Momentum," "Momentum Solar" or the "Company") and its managers were accused of

engaging in systemic discrimination against Black workers, fostering a racially hostile work

environment and retaliating against Black employees who filed discrimination complaints.

These accusations resulted in the filing of a proposed class action lawsuit filed in Brooklyn, New

York entitled *Murrell, et al. v. Pro Custom Solar LLC d/b/a Momentum Solar, et al.*, No. 19 Civ.

2656 (KAM)(CLP) (E.D.N.Y.) (the "Brooklyn Suit").[1]

---

[1]      *See* Patrick McGeehan, *It Seemed Like a Model Green Energy Firm. But Black Workers Paint a Different Picture*, New York Times, May 6, 2019, https://www.nytimes.com/2019/05/06/nyregion/momentum-solar-racial-discrimination-lawsuit.html.

2.      Among the allegations raised in the Brooklyn Suit were that Black employees were repeatedly referred to as "**Nigger**," and were abruptly terminated after they complained.[2]

3.      However, instead of taking these allegations seriously and making necessary changes to Momentum's culture and its impact on Black workers, Dave Wightman, a white regional service manager in Momentum's New Jersey headquarters, took a different approach. In a series of text messages in which he was asked about the Brooklyn Suit, Mr. Wightman (referred to as "Mr. Whiteman" in the text conversation) responded by referring to the serious allegations of racism raised as "bullshit."  Mr. Wightman then mocked the Black workers who came forward to make racial discrimination allegations by texting Black-skinned emojis to that white Momentum employee.

4.      Mr. Wightman's deplorable attitude then worsened, as he sent a GIF image of a group of white-hooded men – an obvious reference to the Ku Klux Klan – with the caption "We ready or what?"  The blatantly racist text messages are displayed in the following screenshot:

---

[2]      The complaint filed in the Brooklyn Suit can be found here:
http://www.wigdorlaw.com/wp-content/uploads/2019/05/Complaint-against-Momentum-Solar-Filed.pdf.



5.      Against the backdrop of such vile, racist attitudes held by members of its upper-most management, Momentum continues to thrive as one of the nation's most successful and fastest growing clean energy companies, recently ranked as the "#2" energy company in the nation, and a top company in New Jersey across all industries.  In just under a decade, Momentum has grown from two employees to over 1,200.  The Company has $100mm+ in revenue per year and operates in New York, New Jersey, Florida, Texas, California, Pennsylvania and Connecticut.  Last year in fact, the state of New Jersey provided Momentum with a $7,200,000 tax credit, while the investment firm Advantage Capital recently invested $4,100,000 in Momentum.

6.      What Momentum's investors, clients and the New Jersey taxpayers who help foot its operations bill do not know is that the management at its New Jersey call center has also

fostered a work environment permeated with vile racism that has targeted its Black employees, including Plaintiff Mark Venson.

7.    Mr. Venson was repeatedly called "**nigger**" and "**boy**" by his white managers at Momentum, and when he complained, he had his employment terminated.

8.    As detailed herein, other Black employees at Momentum's New Jersey call center were also subjected to vile, race-based harassment and discrimination.  This action, which Plaintiff brings as a putative class action, seeks justice for all such Black employees who have been subjected to Momentum's unlawful, racist conduct.

9.    The unlawful discrimination and retaliation described herein was committed in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 *et seq*. ("NJLAD").

10.    Accordingly, Plaintiff brings this action on behalf of himself and the members of the "Proposed Discrimination/Retaliation Class," as defined herein.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under § 1981.  The Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including certain of the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

13.     Plaintiff Mark Venson is a Black adult male and resident of the State of New Jersey, residing in Middlesex County.  At all relevant times, Mr. Venson met the definition of "employee" and/or "eligible employee" under all applicable statutes.

14.     Defendant Pro Custom Solar LLC d/b/a Momentum Solar is a New Jersey limited liability company with its principal place of business located at 3096 Hamilton Boulevard, South Plainfield, NJ 07080.  At all relevant times, Momentum Solar met the definition of an "employer" under all applicable statutes.

15.     Defendant Alex Sheikh is the Chief Revenue Officer and a Managing Partner of Momentum Solar, and has had the authority and ability to control and alter the terms and conditions of all employees who worked at Momentum Solar.  Upon information and belief, Mr. Sheikh resides in Hudson County, New Jersey.

16.     Defendant Adam Gugino is the Senior Vice President of Inside Sales & Customer Service at Momentum Solar, and has had the authority and ability to control and alter the terms and conditions of all employees who worked at Momentum Solar.  Upon information and belief, Mr. Gugino resides in Middlesex County, New Jersey.

17.     Defendant Jeffrey Anclien is the Director of Inside Sales at Momentum Solar, and has had the authority and ability to control and alter the terms and conditions of all employees who worked at Momentum Solar.  Upon information and belief, Mr. Anclien resides in Hunterdon County, New Jersey.

18.     Defendant Brian Alper is the Manager of Inside Sales at Momentum Solar, and has had the authority and ability to control and alter the terms and conditions of all employees

who worked at Momentum Solar.  Upon information and belief, Mr. Alper resides in Middlesex County, New Jersey.

## FACTUAL ALLEGATIONS

### I.    Mark Venson

19.    Mark Venson began working at Momentum in its New Jersey call center in April 2018.

20.    After doing an outstanding job, in the summer of 2018, Mr. Venson realized that he had not been paid certain bonuses he believed he was owed.

21.    As a result, he complained to Defendant Brian Alper about not receiving the wages owed to him.

22.    Mr. Alper responded by saying, "**well nigger you're lucky you got a job**," and "**I don't know why you want to work, you're an old nigger**."

23.    Not only did Mr. Alper repeatedly call Mr. Venson a heinous and disgusting racial epithet, but he failed to address Mr. Venson's wage-related complaint.

24.    Unfortunately, as has been the case with countless people of color working at Momentum, this was not an isolated incident of vile racial harassment and discrimination.

25.    Indeed, Mr. Venson was relentlessly called "**nigger**" or "**boy**" dozens of times by Momentum managers throughout his employment.  For instance, Mr. Alper would routinely say to Mr. Venson, "**this is a job for young boys, not old niggers**."

26.    In addition, Defendant Jeffrey Anclien would also repeatedly call Mr. Venson "**boy**" in a derogatory manner throughout his employment.

27.    In February 2019, as the discriminatory name-calling and race-based hostility intensified, Mr. Venson stood up to Mr. Alper and said, in sum and substance, "I am not a kid.

Please show me some respect." In response, Mr. Alper said, "Fuck you. I am the manager. If you don't like what I do, then quit."

28.    Following Mr. Venson's protected complaint, Mr. Alper began a cruel campaign of retaliation against Mr. Venson. For instance, Mr. Venson was suddenly assigned call lists filled with unresponsive phone numbers that he had to call in order to try to generate business leads. Such non-productive lists were generally reserved for and assigned to new employees who needed training, and not to seasoned, experienced and high-performing employees like Mr. Venson.

29.    Rather, these lists were clearly assigned to Mr. Venson to stunt his performance numbers and ultimately justify his firing.

30.    In March 2019, Mr. Alper's discriminatory and retaliatory treatment became so unbearable that Mr. Venson requested to be moved away from Mr. Alper and to Momentum's transfer department, even though this meant that his overall earning potential would significantly worsen. However, even after Mr. Venson switched departments, Mr. Alper continued to seek out and verbally harass Mr. Venson by calling him racist, discriminatory names daily.

31.    Eventually, in April 2019, Mr. Alper fired Mr. Venson under the thinnest of pretexts. Mr. Alper accused Mr. Venson of "not focusing" during his calls. This false claim stemmed from a simple misunderstanding.

32.    Specifically, during one call, Mr. Venson's headset was not functioning properly, which caused him to be unable to hear the name of the Momentum representative to whom he was transferring a potential customer. Mr. Venson was therefore unable to refer to the representative by name.

33.     Mr. Alper then used this obvious innocent mistake (which was, in any event, certainly not a fireable offense) as a pretense for firing Mr. Venson in retaliation for having complained about Mr. Alper's racist, discriminatory treatment of him weeks earlier.

**II.    Racial Discrimination, Harassment and Retaliation Against Other Black Momentum Employees**

34.     Mr. Venson is also aware of discriminatory actions against other similarly-situated Black employees at Momentum's New Jersey call center.

35.     For instance, Mr. Venson is aware of one Black employee who was fired in May 2018 just two weeks after the employee complained about a racially hostile work environment that included use of the heinous term, "**nigger**."

36.     Specifically, at the end of March 2019, that employee was inside a bathroom and was wearing headphones when Defendant Anclien, Momentum's Director of Inside Sales, and Defendant Alex Sheik, a Managing Partner and Chief Revenue Officer, entered the bathroom.

37.     Mr. Sheikh then said aloud, in the direction of the employee, "**Why is this nigger on the phone in the bathroom?**"

38.     Mr. Anclien laughed.  The two apparently believed that the employee could not hear what Mr. Sheikh had said.

39.      However, the employee did hear this and immediately reported what he heard to his team leader, Bradford Watson, who said he would address the situation.

40.     This employee never received any follow up from Mr. Watson or from anyone else at Momentum regarding his complaint.

41.     Subsequently, in late-April 2019, Defendant Adam Gugino, Senior Vice President of Inside Sales & Customer Service, offensively called this employee a "**boy**" and a "**kid**" – two disgusting slurs with obvious racial connotations.

42.     Mr. Gugino also told this employee, in an intimidating tone, that he had "no right to question anything" that went on at Momentum, and that he had to "do whatever [Mr. Gugino] said."

43.     This employee reported this incident immediately to his team leader, Leo, but nothing was done to address his complaint.

44.     Two weeks later, on May 8, 2019, he was abruptly terminated by Defendant Brian Alper, Momentum's Manager of Inside Sales.

45.     Tellingly, when this employee pressed for a reason why he was being fired, Mr. Alper refused to provide one and merely demurred that the Company did not have to give him a reason.

46.     Of course, the real reason for this employee's termination was that Momentum had had enough of his complaints about the racially hostile work environment to which he was subjected and decided to punish him by ending his employment once and for all.

47.     On May 28, 2019, this employee wrote to Momentum's General Counsel, Anthony Danti, Esq., to inform him that he believed the above-described unlawful discrimination and retaliation violated state and federal laws.

48.     Subsequently, a week later, on the night of June 4, 2019, this employee attended a birthday party for a former Momentum colleague held at Gabriele's Bar & Grill in Piscataway, New Jersey.  Present at the party were several Momentum managers and other staff.

49.     When this employee attempted to shake the hand of a current Momentum manager named Andre, Andre refused, and began to curse at him.

50.     Specifically, Andre (who appeared to have been drinking and smoking marijuana) said to this employee, "fuck you," and "I don't give a fuck, you fucked with my money, fuck that."  This was an obvious reference to this employee's letter to Mr. Danti.

51.     Andre's harassment did not end there.  Instead, Andre physically attacked the employee by aggressively bumping into him.

52.     Andre then tried repeatedly to instigate a physical altercation with the employee and attempted to provoke him into a confrontation by saying, in sum and substance, "I know you want to do something.  Just know I'm up for all challenges.  If you have an issue with me, we can get into it right now."

53.     Although this employee repeatedly tried to walk away, each time Andre returned to try to cajole him into fighting.  Fortunately, the employee did not "take the bait."

54.     Notably, Andre's intimidating and violent conduct was done in front of both Momentum staff (several of whom were people of color) and in front of several Momentum managers, including two managers named Cole and Javier.  Neither manager did anything to intervene or help the employee.  Rather, they bought Andre more alcoholic beverages.

55.     Not only was this a direct retaliatory act against this employee committed by a Momentum manager, but it was also unquestionably a message to other Momentum employees of color warning them against standing up against racial discrimination and harassment in the workplace.

### CLASS ALLEGATIONS
#### (§ 1981 and the NJLAD)

I.      **Class Definition**

57.     This is a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, brought by Plaintiff on behalf of a "Proposed Discrimination/Retaliation Class" of similarly-

situated employees.  The Proposed Discrimination/Retaliation Class (subject to future revision as

may be necessary) is defined as follows:

> **All Black call center employees who worked for Momentum out of its New Jersey call center during the full statutory period.**

58.    In order to be a member of the Proposed Discrimination/Retaliation Class, an

individual must have been or be included within the scope of the class definition at any time

during the applicable liability or statute of limitations periods, up to and including the date of any

judgment in this case (the "Proposed Discrimination/Retaliation Class Period").

59.    The unlawful conduct suffered by Plaintiff and the members of the Proposed

Discrimination/Retaliation Class, includes, but is not limited to:

- Subjecting Plaintiff and the Proposed Discrimination/Retaliation Class to repeated highly offensive and patently racist comments.

- Subjecting Plaintiff and the Proposed Discrimination/Retaliation Class to other acts of racial hostility and discrimination, including, *inter alia*,

    o    demeaning, belittling and insulting Plaintiff and the Proposed Discrimination/Retaliation Class;

    o    refusing to communicate with Plaintiff and the Proposed Discrimination/Retaliation Class;

    o    ostracizing Plaintiff and the Proposed Discrimination/Retaliation Class;

    o    assigning Plaintiff and the Proposed Discrimination/Retaliation Class to menial jobs while providing white employees with sophisticated work and opportunities for advancement; and

    o    assigning Plaintiff and the Proposed Discrimination/Retaliation Class to unfavorable work assignments.

- Failing to promote qualified members of the Proposed Discrimination/Retaliation Class, including Plaintiff.

- Paying Plaintiff and the Proposed Discrimination/Retaliation Class less than similarly-situated white employees.

- Failing to prevent, address, properly investigate and/or take remedial action regarding discrimination committed against Plaintiff and the Proposed Discrimination/Retaliation Class.

- Retaliating against employees who report or complain about Defendants' discriminatory conduct, including, but not limited to, by terminating their employment.

60. The Proposed Discrimination/Retaliation Class contains at least 40 members during the applicable limitations period.

61. Plaintiff and the Proposed Discrimination/Retaliation Class have standing to seek the relief sought herein because of the adverse effects that Defendants' unlawful patterns, practices and/or policies have had on them individually and generally.

62. The patterns, practices and/or policies described in this Complaint demonstrate that discrimination and retaliation are not unusual at Momentum; rather, they are part and parcel to its standard operating patterns, practices and/or policies.

II. **Numerosity and Impracticality of Joinder**

63. The members of the Proposed Discrimination/Retaliation Class are sufficiently numerous to make joinder of their claims impracticable. While the exact number of Proposed Discrimination/Retaliation Class members is unknown because such information is in the exclusive control of Momentum, upon information and belief there more than 40 current and former employees who have been victims of the discriminatory and retaliatory conduct and adverse employment actions described herein.

64.     Although precise determination of the number of Proposed

Discrimination/Retaliation Class members is impossible at this time, it is significant and satisfies

the numerosity requirement of FRCP 23(a).

**III.    Common Questions of Law and Fact**

65.     The claims alleged on behalf of Plaintiff and the Proposed

Discrimination/Retaliation Class raise questions of law and fact common to Plaintiff and

Proposed Discrimination/Retaliation Class members.  Chief among these questions are as

follows:

- Whether Plaintiff and the Proposed Discrimination/Retaliation Class were subjected to repeated and highly offensive and patently racist comments.

- Whether Plaintiff and the Proposed Discrimination/Retaliation Class were subjected to other acts of racial hostility and discrimination, including, *inter alia*,

  - demeaning, belittling and insulting Plaintiff and the Proposed Discrimination/Retaliation Class;

  - refusing to communicate with Plaintiff and the Proposed Discrimination/Retaliation Class;

  - ostracizing Plaintiff and the Proposed Discrimination/Retaliation Class;

  - assigning Plaintiff and the Proposed Discrimination/Retaliation Class to menial jobs while providing white employees with sophisticated work and opportunities for advancement; and

  - assigning Plaintiff and the Proposed Discrimination/Retaliation Class to unfavorable job sites and work assignments.

- Whether Defendants failed to promote qualified members of the Proposed Discrimination/Retaliation Class, including Plaintiff.

- Whether Defendants paid Plaintiff and the Proposed Discrimination/Retaliation Class less than similarly-situated white employees.

- Whether Defendants failed to prevent, address, properly investigate and/or take remedial action regarding discrimination committed against Plaintiff and the Proposed Discrimination/Retaliation Class.

- Whether Defendants retaliated against employees who report or complain about Defendants' discriminatory conduct, including, but not limited to, by terminating their employment.

66.     Thus, the common question requirement of FRCP 23(a) is satisfied.

## IV.    **Typicality of Claims and Relief Sought**

67.     Plaintiff is a member of the Proposed Discrimination/Retaliation Class he seeks to represent.

68.     The claims of Plaintiff are typical of the claims of the Proposed Discrimination/Retaliation Class in that they all arise from the same unlawful patterns, practices and/or policies of Defendants and are based on the legal theory that these patterns, practices and/or policies violate legal rights protected by federal and state law.

69.     Plaintiff and the members of the Proposed Discrimination/Retaliation Class all allege that they each were the victim of unlawful adverse employment decisions and/or a hostile work environment based on race and/or color and/or in retaliation for complaints regarding unlawful discrimination.

70.     The relief that Plaintiff seeks for Defendants' unlawful patterns, practices and/or policies is typical of the relief which is sought on behalf of the Proposed Discrimination/Retaliation Class.

71.     Thus, the typicality requirement of FRCP 23(a) is satisfied.

V.    **Adequacy of Representation**

72.    The interests of Plaintiff are co-extensive with those of the Proposed Discrimination/Retaliation Class he seeks to represent in the instant case.

73.    Plaintiff is willing and able to represent the Proposed Discrimination/Retaliation Class fairly and vigorously as he pursues his similar individual claims.

74.    Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

75.    The combined interests, experience and resources of Plaintiff and his counsel to competently litigate the individual and class claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

VI.    **Requirements of Rule 23(b)**

A.    **Rule 23(b)(1)**

76.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

77.    Specifically, all evidence of Defendants' patterns, practices and/or policies and the issue of whether they are in violation of federal, state and local law would be exchanged and litigated repeatedly.

78.    Accordingly, certification of the Proposed Discrimination/Retaliation Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Proposed Discrimination/Retaliation Class and Defendants.

79.     By filing this Complaint, Plaintiff is preserving the rights of Proposed Discrimination/Retaliation Class members with respect to the statute of limitations on their claims.  Therefore, not certifying a class would substantially impair and/or impede the other members' ability to protect their interests.

**B.     Rule 23(b)(2)**

80.     Defendants have acted on grounds, described herein, generally applicable to Plaintiff and the members of the Proposed Discrimination/Retaliation Class, by adopting and following systemic patterns, practices and/or policies that are discriminatory and retaliatory towards Plaintiff and the members of the Proposed Discrimination/Retaliation Class.

81.     These discriminatory and retaliatory acts are fostered by Defendants' standard patterns, practices and/or policies, are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the Proposed Discrimination/Retaliation Class as a whole.

82.     Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic discrimination based on Plaintiff's and the members of the Proposed Discrimination/Retaliation Class' race and/or color and/or engagement in protected activity.

83.     Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the Proposed Discrimination/Retaliation Class' entitlement to monetary and non-monetary remedies for individual losses caused by, and exemplary purposes necessitated by, such systemic discrimination and retaliation.

84.     Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

C.      **Rule 23(b)(3)**

85.     The common issues of fact and law affecting Plaintiff's claims and those of the

Proposed Discrimination/Retaliation Class, including, but not limited to, the common issues

identified in the paragraphs above, predominate over issues affecting only individual claims.

86.     A class action is superior to other available means for the fair and efficient

adjudication of Plaintiff's claims and the claims of the Proposed Discrimination/Retaliation

Class.

87.     The cost of proving Defendants' pattern and practice of discrimination makes it

impracticable for the members of the Proposed Discrimination/Retaliation Class to pursue their

claims individually.

88.     The class action will not be difficult to manage for reasons including, but not

limited to, the discrete organizational nature of the Proposed Discrimination/Retaliation Class, as

well as the common questions of law and fact described above.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of § 1981)**
*Against All Defendants*

89.     Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class,

hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth

herein.

90.     As described above, Defendants have discriminated against Plaintiff and the

Proposed Discrimination/Retaliation Class on the basis of race and/or color in violation of

§ 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or

remedy a hostile work environment and disparate treatment based on race and/or color.

17

91.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of § 1981, Plaintiff and the Proposed Discrimination/Retaliation Class have suffered, and continue to suffer, economic damages, mental anguish and emotional distress for which they are entitled to an award of damages.

92.    Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of § 1981 for which Plaintiff and the Proposed Discrimination/Retaliation Class are entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of § 1981)
### *Against All Defendants*

93.    Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

94.    As described above, Defendants have retaliated against Plaintiff and the Proposed Discrimination/Retaliation Class for engaging in protected activity, including, *inter alia*, by terminating their employment.

95.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of § 1981, Plaintiff and the Proposed Discrimination/Retaliation Class have suffered, and continue to suffer, economic damages, mental anguish and emotional distress for which they are entitled to an award of damages.

96.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of § 1981 for which Plaintiff and the Proposed Discrimination/Retaliation Class are entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NJLAD)
### *Against All Defendants*

97.      Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

98.      As described above, Defendants have discriminated against Plaintiff and the Proposed Discrimination/Retaliation Class on the basis of race and/or color in violation of the NJLAD by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment and disparate treatment based on race and/or color.

99.      As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff and the Proposed Discrimination/Retaliation Class have suffered, and continue to suffer, economic damages, mental anguish and emotional distress for which they are entitled to an award of damages.

100.      Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of the NJLAD for which Plaintiff and the Proposed Discrimination/Retaliation Class are entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NJLAD)
### *Against All Defendants*

101.      Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

102.    As described above, Defendants have retaliated against Plaintiff and the Proposed Discrimination/Retaliation Class for engaging in protected activity, including, *inter alia*, by terminating their employment.

103.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff and the Proposed Discrimination/Retaliation Class have suffered, and continue to suffer, economic damages, mental anguish and emotional distress for which they are entitled to an award of damages.

104.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of the NJLAD for which Plaintiff and the Proposed Discrimination/Retaliation Class are entitled to an award of punitive damages.

<u>**FIFTH CAUSE OF ACTION**</u>
**(Aiding and Abetting Violations of the NJLAD)**
***Against Defendants Sheikh, Gugino, Anclien and Alper***

105.    Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class, hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

106.    By the action described above, Defendants Sheikh, Gugino, Anclien and Alper aided and abetted the discrimination and retaliation that has been committed against Plaintiff and the Proposed Discrimination/Retaliation Class in violation of the NJLAD.

107.    As a direct and proximate result of the unlawful conduct aided and abetted by Defendants Sheikh, Gugino, Anclien and Alper in violation of the NJLAD, Plaintiff and the Proposed Discrimination/Retaliation Class have suffered, and continue to suffer, economic damages, mental anguish and emotional distress for which they are entitled to an award of damages.

108.    The unlawful discriminatory and retaliatory actions aided and abetted by Defendants Sheikh, Gugino, Anclien and Alper constitute malicious, willful and wanton violations of the NJLAD for which Plaintiff and the Proposed Discrimination/Retaliation Class are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Proposed Discrimination/Retaliation Class, prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    Certification of the case as a class action maintainable under FRCP 23, on behalf of the Proposed Discrimination/Retaliation Class;

B.    Designation of Plaintiff as representative of the Proposed Discrimination/Retaliation Class;

C.    Designation of Plaintiff's counsel of record as class counsel for the Proposed Discrimination/Retaliation Class;

D.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New Jersey;

E.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

F.    An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect the lives of Plaintiff and the Proposed Discrimination/Retaliation Class;

G.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff and the Proposed Discrimination/Retaliation Class for all monetary and/or economic damages;

H.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff and the Proposed Discrimination/Retaliation Class for all non-monetary and/or compensatory damages;

I.      An award of punitive damages;

J.      Pre- and post-judgment interest on all amounts due;

K.      An award of costs that Plaintiff and the Proposed Discrimination/Retaliation Class incur in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

L.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages.

Dated: October 22, 2019
       New York, New York

Respectfully Submitted,

**WIGDOR LLP**

By: _____

      Tanvir H. Rahman
      Michael J. Willemin
      (*pro hac vice* admission pending)

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
trahman@wigdorlaw.com
mwillemin@wigdorlaw.com

*Counsel for Plaintiff and Proposed Counsel
for the Proposed Discrimination/Retaliation
Class*