**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARK VENSON,

        Plaintiff,

v.

PRO CUSTOM SOLAR LLC, *et al.*

        Defendants.

Civil Action No. 19-19227 (ES) (MAH)

**OPINION & ORDER**

**McNULTY, DISTRICT JUDGE**

Before the Court is the motion (DE 4) of defendants Pro Custom Solar LLC d/b/a Momentum Solar ("Momentum"), Jeffrey Anclien and Brian Alper (collectively "Employers")[1] to strike certain allegations from plaintiff Mark Venson's Complaint pursuant to Federal Rule of Civil Procedure 12(f).[2] I have considered the parties' submissions and decide this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). As set forth below,

---

[1] Two other individual defendants were named in the Complaint but were subsequently terminated from this action. (DE 7). The termination of those defendants mooted the Employers' motion for partial dismissal, which was filed in conjunction with the pending motion to strike.

[2] Citations to the record will be abbreviated as follows:

    Complaint = Venson's complaint, DE 1
    Mov. Br. = Employers' brief in support of their motion to strike, DE 4-3
    Opp. Br. = Venson's brief in opposition to the Employers' motion to strike, DE 8
    Reply Br. = Employers' reply brief in support of their motion to strike, DE 11

the motion to strike is DENIED.

**I.   BACKGROUND**

Venson began working at Momentum, a clean energy company, in its New Jersey call center in April of 2018. (Complaint ¶ 19). After doing an allegedly outstanding job in the summer of 2018, Venson realized that he had not been paid the bonuses he believed he was owed. (*Id.* ¶ 20). Venson complained to Alper, the manager of inside sales at Momentum, who allegedly responded by stating "well n*[3] you're lucky you got a job," and "I don't know why you want to work, you're an old n*." (*Id.* ¶ 22). According to the Complaint, this type of discriminatory name calling was routine, as Venson was "relentlessly called 'n*' or 'boy' dozens of times by Momentum managers throughout his employment." (*Id.* ¶ 25). Venson further alleges that the discriminatory name-calling and race-based hostility escalated, causing Venson to stand up to Alper again in February of 2019, stating, "I am not a kid. Please show me some respect." (*Id.* ¶ 27). Alper allegedly responded by stating "F* you. I am the manager. If you don't like what I do, then quit." (*Id.*).

Following these incidents, Alper allegedly began retaliating against Venson by assigning him to certain call lists with unresponsive phone numbers in order to "stunt his performance numbers and ultimately justify his firing." (*Id.* ¶¶ 28–29). According to the Complaint, in March 2019, Alper's actions

---

[3]   I have throughout substituted this designation for the well-known slur for an African-American. I have also abbreviated indecent language. The motion to strike is not based on the presence of such language. While the presentation of evidence at trial might require full quotation, there is no need for it in this published opinion.

became so unbearable that Venson requested to be transferred, even though a transfer would decrease his earning potential. (*Id.* ¶ 30). In April 2019, Mr. Alper fired Venson, accusing him of not focusing during his calls. (*Id.* ¶¶ 31–33).

Venson further alleges that these incidents of racial discrimination and retaliation were not unique to him, and that other Black employees experienced similar behavior while employed at Momentum. As an example, Venson describes the events surrounding the firing of another unnamed Black employee. (*Id.* ¶ 35). Allegedly, in March 2019, this unnamed employee was in a bathroom wearing headphones when Anclien, the director of inside sales at Momentum, and another individual entered and Anclien asked, "Why is this n\* on the phone in the bathroom?" (*Id.* ¶¶ 36–37). The unnamed employee heard the comment and reported it to his team leader, who said he would address the situation but never did. (*Id.* ¶¶ 39–40). According to the Complaint, this same employee was "offensively called . . . a 'boy' and a 'kid'—two disgusting slurs with obvious racial connotations." (*Id.* ¶ 41). He was also told that he "had no right to question anything that went on at Momentum, and that he had to do whatever [his superior] said." (*Id.* ¶ 42 (internal quotation marks omitted)). The unnamed employee reported this incident to his team leader, but nothing was done to address it. (*Id.* ¶ 43). Thereafter, on May 8, 2019, Alper abruptly terminated this unnamed employee and refused to provide the employee with a reason for his termination. (*Id.* ¶¶ 44–45). Venson alleges that the real reason the employee was terminated was in retaliation to the amount of complaints

Momentum was receiving about the racially hostile work environment. (*Id.* ¶ 46). Venson further alleges that the hostility towards this other individual did not end with his termination and continued at a birthday party for a former Momentum colleague in June 2019. (*Id.* ¶¶ 48–55).

In addition to this specific example, Venson includes in his Complaint allegations about a proposed class action lawsuit occurring in federal court in the Eastern District of New York in which Black employees have accused Momentum and its managers of "engaging in systemic discrimination against Black workers, fostering a racially hostile work environment and retaliating against Black employees who filed discrimination complaints." (*Id.* ¶ 1 (the "Brooklyn Suit"). Venson further alleges that an employee of Momentum, Dave Wightman,[4] reacted to the Brooklyn Suit in a series of text messages, discrediting the allegations of racism, mocking the employees who complained, and sending an image of a group of white-hooded men. (*Id.* ¶¶ 3–4).

Based on the foregoing, Venson brings claims on behalf of himself and all similarly-situated employees for racial discrimination and harassment and unlawful retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 *et seq.* ("NJLAD"). (*Id.* ¶¶ 89–108). In the present motion, the Employers move to strike certain allegations in the Complaint, arguing that they are immaterial and prejudicial.

---

[4]   In the text messages, the spelling of his name is rendered as "Whiteman."

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(f), a court may, upon motion or s*ua sponte,* "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (internal quotation marks omitted). However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)); *see also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 702 (D.N.J. 2013) (explaining that motions to strike are extremely disfavored). "A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." *Kim v. Baik*, No. 06-3604, 2007 WL 674715, at *5 (D.N.J. Feb. 27, 2007) (quoting *River Road Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)). In short, this is not the time to decide motions *in limine.* The issue is whether there is some harm in permitting something to be alleged at all, a high bar.

### III. ANALYSIS

The Employers move to strike three categories of allegations from the Complaint as irrelevant and prejudicial: (i) Brooklyn Suit allegations; (ii) allegations about Momentum's success and tax breaks; and (iii) allegations about the unnamed employee. (*See* Mov. Br. at 8–13). I address each category of allegations separately but reach a common conclusion: The Employers have not met their burden of demonstrating they are entitled to the drastic remedy provided by Rule 12(f).

#### A. The Brooklyn Suit

The Employers argue that the allegations pertaining to an "entirely separate lawsuit . . . , including references to Wightman's alleged text messages about that lawsuit, are irrelevant to the present suit, have no bearing on Venson's claims, and are included for no other reason than to confuse the issues and prejudice Defendants." (Mov. Br. at 9). In response, Venson argues that the Brooklyn Suit allegations are relevant to his and the putative class's claims. (*See* Opp. Br. at 13–17). I cannot find them so lacking in potential relevance that they must be struck at the pleading stage.

Consider the individual and class claims. In the Complaint, Venson and the putative class allege that Momentum and its managers have "fostered a work environment permeated with vile racism that has targeted its Black employees," and that Black employees have been harassed, discriminated against and retaliated against in response to their complaints about the discrimination. As Venson points out, the Brooklyn Suit allegations are

6

relevant because of the overlap in control of the New Jersey and New York locations and the possibility of "overlap between the leadership policies and practices across [both locations], [and] the impact the policies and practices promulgated by such leaders have had on Black employees across both branches." (Opp. Br. at 15). Venson also argues that the Brooklyn Suit allegations may be relevant to the extent the Employers may have been put on notice through complaints lodged by class members in the Brooklyn Suit about racial discrimination, harassment and retaliation and yet failed to take remedial action. (*Id.* at 15–16). In addition, as Venson points out, the allegations about Wightman's response to the complaints in the Brooklyn Suit are probative of a hostile work environment, racist culture, and how managers react to complaints of racial discrimination. (*Id.* at 14). Such allegations may or may not be borne out in discovery; they may or may not ultimately be found admissible in evidence on relevancy, Rule 403, hearsay, or other grounds. But I cannot conclude that the Brooklyn Suit allegations are so immaterial as to warrant their being struck. *See e.g., Gittens-Bridges v. City of New York*, No. 19-272, 2020 WL 3100213, at *7 (S.D.N.Y. June 11, 2020) (collecting cases for the proposition that evidence of past discriminatory practices of an employer is generally relevant in employment discrimination claims); *Greer v. Cty. of San Diego*, No. 19-0378, 2019 WL 5453955, at *14 (S.D. Cal. Oct. 24, 2019) (denying motion to strike allegations of prior litigation because the complaint

7

"hinge[d] on showing a pattern of misconduct of which the County and individually named Defendants had notice").[5]

### B. Momentum's Success

Next, the Employers seek to strike allegations pertaining to Momentum being a successful and growing business that has recently received significant tax credits and private investments. (Mov. Br. at 10–11). The Employers argue that these allegations are completely unrelated to the claims and are prejudicial. (*Id.*). Venson argues that the allegations are relevant to their damages claims and, in any event, are not prejudicial. (Opp. Br. at 18–19). I find that the Employers have not adequately demonstrated that the mere presence of such allegations in the Complaint is prejudicial.

The Employers proffer two reasons why the allegations related to Momentum's success are prejudicial: first, they serve to cast Momentum in a less favorable light in the eyes of a jury (Mov. Br. at 10–11); second, the Employers argue that these allegations will act as a conduit for inappropriate discovery (*id.* at 11). Even accepting that the allegations would serve these purposes, the Employers' arguments are unpersuasive in light of the mechanisms available to the Employers at later stages of this litigation. Specifically, they may file a motion *in limine* to prevent the jury from hearing

---

[5] The two cases cited by the Employers in support of striking the Brooklyn Suit allegations are inapposite. *See New Jersey Protection & Advocacy, Inc. v. Velez*, No. 08-1858, 2008 WL 4192068, at *2 (D.N.J. Sept. 9, 2008) (explaining that the other lawsuits involved different controversies having no bearing on the issues raised by plaintiff); *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 616–17 (E.D. Pa. 2015) (finding other discrimination lawsuits irrelevant where they involved separate disputed controversies and were dismissed in defendant's favor).

the allegations and may seek a protective order to limit inappropriate discovery. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH,* No. 10-453, 2010 WL 5239238, at *12 (D.N.J. Dec. 16, 2010) (denying a motion to strike and rejecting similar arguments about burdensome discovery and prejudicing the trier of fact); *see also Huertas v. Capital One Bank, N.A.,* No. 17-1891, 2019 WL 6254933, at *4 (D.N.J. Aug. 1, 2019) ("Other than a vague argument that Plaintiff will be forced to conduct discovery, Plaintiff has not asserted sufficient prejudice to strike [the] alleged defenses at this time."). Accordingly, the Employers have not met their burden of demonstrating that allegations about Momentum's success and tax breaks are prejudicial, and the motion to strike these allegations is denied. *See Marshall v. Verde Energy USA, Inc.*, No. 18-1344, 2019 WL 6975424, at *8 (D.N.J. Dec. 19, 2019) (denying motion to strike where defendant did not explain how it was unfairly prejudiced by the allegations).

  **C.** **Conduct Toward Unidentified Employee**

 Finally, the Employers seek to strike allegations about discriminatory conduct towards an unnamed employee. They argue that because Venson did not witness the incidents, which occurred after his firing, they are "completely unrelated to Venson's employment and termination and involve managers different from those alleged to have participated in decisions adverse to Venson's employment." (Mov. Br. at 13). Venson responds that these allegations are plainly relevant to his and the putative class's claims,

irrespective of whether he personally witnessed the incident. (Opp. Br. at 9). Again, I agree with Venson.

As explained *supra*, Venson brings claims on his behalf and on behalf of the putative class, alleging that race-based discrimination against Black employees permeated his place of employment and created a hostile work environment. Thus, allegations that provide specific examples of race-based discrimination and/or help establish the overall working environment at Momentum are plainly pertinent (or at least not plainly irrelevant) to such claims. *Bandy v. Advance Auto Parts, Inc.*, No. 11-0365, 2012 WL 831027, at *6 (W.D. Va. Mar. 6, 2012) (declining to strike allegations concerning discrimination against other employees because they represent evidence of discriminatory animus), *aff'd*, 535 F. App'x 260 (4th Cir. 2013); *Ahad v. S. Illinois Sch. of Med.*, No. 15-3308, 2016 WL 3023971, at *3 (C.D. Ill. May 25, 2016) (collecting cases); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 317–18 (S.D.N.Y. 2001) (declining to strike certain allegations which spoke to the defendants' general receptivity to employee complaints of harassment). Again, the evidence may or may not be found admissible; indeed the class may or may not be certified. But these facts may be alleged.

The Employers as much as concede relevancy: "Defendants do not challenge the general proposition that an employer's treatment of similarly situated members of a protected class may have relevance in discovery and in response to a motion for summary judgment." (Reply Br. at 2). They argue, however, that they may not be pled because they consist of hearsay with

10

respect to an unidentified party. (*Id.* at 2–3). The Employers provide no authority for this statement, which seems to have the standard backwards. Pleading first, proof afterward. I am not persuaded.

The Employers' focus on the irrelevancy of the allegations to Venson's individual experience—even if persuasive—ignores that the Complaint alleges putative class claims on behalf of "all Black call center employers who worked for Momentum out of its New Jersey call center during the full statutory period." (Complaint ¶ 57). So even if these allegations were irrelevant to some individual claim by Venson, they are not "so unrelated" to the putative class claims to justify the remedy of striking them from the Complaint.

Accordingly, the Employers' request to strike allegations about the unnamed employee is denied.

## ORDER

IT IS THEREFORE this 12th day of November, 2020

ORDERED that the Employers' motion to strike (DE 4) is DENIED in its entirety.

*/s/ Kevin McNulty*
**Kevin McNulty, U.S.D.J.**