Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK VENSON, ALISSA WINFREY, AHMED SUNKINS, O'NEIL HALL, and BASIL OGUEKWE,<br><br>        Plaintiffs,<br><br>        v.<br><br>PRO CUSTOM SOLAR LLC d/b/a MOMENTUM SOLAR, JEFFREY ANCLIEN and BRIAN ALPER,<br><br>        Defendants. | Civil Action No.: 19-19227 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiffs Mark Venson, Alissa Winfrey, Ahmed Sunkins, O'Neil Hall, and Basil Oguekwe filed this putative class action on behalf of themselves and all other similarly situated employees against Defendants Pro Custom Solar LLC d/b/a/ Momentum Solar ("Momentum"), Jeffrey Anclien, and Brian Alper (collectively, "Defendants") for alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). (D.E. No. 73 ("SAC")). Before the Court is Defendants' motion to dismiss the SAC and to compel arbitration against plaintiffs Ahmed Sunkins, O'Neil Hall, and Basil Oguekwe only. (D.E. No. 74 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion is **DENIED** without prejudice pending limited fact discovery on the issue of arbitrability.

1

I. **BACKGROUND**

   A. **Factual Allegations and Procedural History**

Plaintiffs are former Momentum employees who worked in Momentum's New Jersey call center at various times from 2018 to 2020. (SAC ¶¶ 27, 39, 42, 57, 69, 77 & 81).[1] According to the SAC, Defendants regularly subjected Plaintiffs and other "Black call center employees who worked for Momentum" to racial hostility and discrimination, including "highly offensive and patently racist comments;" lower pay than "similarly-situated white employees;" and retaliation for reporting or complaining "about Defendants' discriminatory conduct." (*Id.* at 18 ¶¶ 57 & 59). Plaintiffs allege that "discrimination and retaliation are not unusual at Momentum" but are "part and parcel to its standard operating patterns." (*Id.* at 19 ¶ 62).

Venson initiated this action on October 22, 2019, alleging five causes of action against Defendants on behalf of himself and "[a]ll Black call center employees who worked for Momentum out of its New Jersey call center during the full statutory period." (D.E. No. 1 ¶¶ 57 & 89–108). The initial complaint raised claims for discrimination and retaliation under § 1981 and the NJLAD. (*Id.* ¶¶ 89–108). On April 2, 2021, Venson filed an amended complaint which raised two additional claims under Title VII against Momentum. (D.E. No. 43 ¶¶ 108–15). On August 30, 2021, Venson filed a motion for leave to amend the amended complaint to add four putative class members, those being Winfrey, Sunkins, Hall, and Oguekwe. (D.E. No. 57; D.E. No. 57-1 at 1). Defendants opposed, arguing in part that the claims of Sunkins, Hall, and Oguekwe would be futile because they are subject to binding arbitration. (D.E. No. 60 at 19–27). Magistrate Judge Hammer granted in part Venson's motion for leave to amend and rejected Defendants'

---

[1] The Court cites to paragraphs 1 through 115 of the SAC by paragraph number. Thereafter, the Court cites to the SAC by page and paragraph number because Plaintiffs did not number the paragraphs of the SAC sequentially. (*See* SAC at 17 (listing paragraph number 57 directly after paragraph 115)).

2

argument "without prejudice to their right to later file a motion to compel arbitration or to dismiss the [SAC]." (D.E. No. 69 at 11).

Venson filed the SAC on November 30, 2021, adding Winfrey, Sunkins, Hall, and Oguekwe as plaintiffs. (SAC). As permitted by Judge Hammer (D.E. No. 70), the SAC asserts the following claims: (i) discrimination in violation of § 1981 against all Defendants by all Plaintiffs; (ii) retaliation in violation of § 1981 against all Defendants by Venson and Oguekwe; (iii) discrimination in violation of NJLAD against Momentum by all Plaintiffs; (iv) retaliation in violation of NJLAD against Momentum by Venson and Oguekwe; (v) aiding and abetting violations of the NJLAD against defendants Anclien and Alper by all Plaintiffs; (vi) discrimination in violation of Title VII against Momentum by Venson; and (vii) retaliation in violation of Title VII against Momentum by Venson. (SAC at 24–29 ¶¶ 89–115).

On December 8, 2021, Defendants moved to dismiss the SAC and to compel plaintiffs Sunkins, Hall, and Oguekwe to arbitrate their claims pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, to dismiss the SAC pursuant to Rule 12(b)(6). (D.E. No. 74-2 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 77 ("Opp. Br."); D.E. No. 79 ("Reply")).

In their moving brief, Defendants assert, and Plaintiffs do not dispute, that Oguekwe, Sunkins, and Hall executed individual arbitration agreements with Momentum on August 2, 2019, September 9, 2019, and October 19, 2019, respectively (together, the "Arbitration Agreements").
[2] (Mov. Br. at 2; *see also* Opp. Br. at 2).

The Arbitration Agreements read, in relevant part:

> As a condition of Your employment or continued employment with the Company, You agree that all "Covered Claims" (as defined in Section 2, arising out of or relating to Your employment relationship

---

[2] The Court notes that though Defendants and Plaintiffs state that Hall signed an arbitration agreement with Momentum on October 19, 2019 (Mov. Br. at 2; *see* Opp. Br. at 10), the arbitration agreement to which they cite is dated October 17, 2019. (D.E. No. 60-2, Ex. B to D.E. No. 60-1 ("Pelosi Cert.") at 6).

> with the Company or the termination of that relationship, must be submitted for final and binding resolution to an impartial Arbitrator[.]

(Mov. Br. at 12 (quoting D.E. No. 60-2, Exs. A, B & C to Pelosi Cert. at 1)). Claims covered by the Arbitration Agreements include:

> c. Any employment-related dispute that could be asserted in court or any disputes, claims, or controversies with any entity or individual arising out of or related to the application for employment, background checks, privacy, the employment relationship or the termination of that relationship, . . . retaliation, discrimination or harassment and claims arising under the . . . Civil Rights Act of 1964, **42 U.S.C. §1981**, . . . Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991 . . . **state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to Employee's employment or the termination of employment** (including, unless excluded by state or federal law, torts and post-employment defamation or retaliation); and
>
> d. **Claims made against the Company or any of its subsidiary or affiliated entities, or its individual officers, directors or employees for any matters arising out of any of the above claims**.

(*Id.* at 14–15 (quoting D.E. No. 60-2, Exs. A, B & C to Pelosi Cert. at 1–2)).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Rule 12(b)(1) governs jurisdictional challenges to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become

moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

### B. Rule 12(b)(6) Standard

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record

of the case.'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

**III.    DISCUSSION**

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Defendants first assert pursuant to Rule 12(b)(1) that the Court lacks subject matter jurisdiction over plaintiffs Sunkins, Hall, and Oguekwe's claims in light of the Arbitration Agreements. (Mov. Br. at 12–17). Alternatively, Defendants request that the Court dismiss these plaintiffs' claims and order them to arbitrate pursuant to Rule 12(b)(6). (*Id.* at 18–19). Plaintiffs oppose, arguing that the Arbitration Agreements should be set aside because they were obtained with the intention of diminishing the putative class action brought by Venson and the conditions surrounding the signing of the Arbitration Agreements were coercive. (Opp. Br. at 2 & 26).

As an initial matter, the Court must determine which standard of review governs Defendants' Motion—Rule 12(b)(1) or Rule 12(b)(6).

### A.  Rule 12(b)(1)

Defendants contend that the Court lacks subject matter jurisdiction under Rule 12(b)(1), which "provides for the efficient disposal of litigation that is barred from the courts by an arbitration agreement." (Mov. Br. at 8). Plaintiffs oppose, asserting that "Rule 12(b)(1) is not the appropriate mechanism to seek to compel arbitration because a motion to compel arbitration is not jurisdictional in nature." (Opp. Br. at 11). For the reasons discussed below, the Court declines to consider the Motion under Rule 12(b)(1).

Courts in this Circuit have reached different conclusions on the issue of whether Rule 12(b)(1) is the proper route for dismissing a suit based on an arbitration agreement. Some courts in this District have found that they "may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties." *M. Cohen & Sons, Inc. v. Platte River Ins. Co.*, No. 20-2149, 2021 WL 791831, at *5 (D.N.J. Feb. 27, 2021) (quoting *Daly v. Norfolk S. R.R. Co.*, No. 09-4609, 2011 WL 2559533, at *1 (D.N.J. June 27, 2011)); *Hoboken Yacht Club LLC v. Marinetek N. A. Inc.*, No. 19-12199, 2019 WL 7207486, at *2 n.3 (D.N.J. Dec. 26, 2019)

(proceeding "on the theory of lack of subject matter jurisdiction" to evaluate Defendant's motion to dismiss pursuant to an arbitration agreement but acknowledging "doubts that Rule 12(b)(1) is the appropriate section under which to proceed"); *Asbell v. Integra Lifesciences Holdings Corp.*, No. 14-0677, 2014 WL 6992000, at *2 (D.N.J. Dec. 10, 2014).  By contrast, other courts in our District and this Circuit have found that "Rule 12(b)(1) . . . is not the correct rule of law under which to assert a contract-based defense requiring arbitration." *Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, No. 14-6115, 2015 WL 4476017, at *2 (D.N.J. July 21, 2015) (quoting *Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652, 656 (W.D. Pa. 2014)); *Defillipis v. Dell Fin. Servs.*, No. 14-0115, 2014 WL 4198015, at *1 (M.D. Pa. Aug. 22, 2014).

The Third Circuit does not seem to have addressed this issue directly in a precedential opinion.  In an unpublished decision, the Third Circuit observed that "motions seeking the dismissal of [an] . . . action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action.  Rather, such dismissals are generally effected under Rule 12(b)(6) . . . or Rule 56." *Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004) (citation omitted); *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324 (3d Cir. 2022) (stating that "[m]otions to compel arbitration are treated either as motions to dismiss or motions for summary judgment.").  However, in another unpublished decision, the Third Circuit approvingly discussed a district court's prior action in dismissing a complaint for lack of subject matter jurisdiction due to the existence of an enforceable arbitration clause, though the issue on appeal did not focus specifically on the propriety of using a 12(b)(1) motion to dismiss a claim based on an arbitration agreement.  *See Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 117–19 (3d Cir. 2015).

With no clear authority on whether Rule 12(b)(1) is the proper vehicle for dismissing a suit based on an arbitration agreement within this Circuit, the Court finds that an examination of the FAA is instructive. Section 3 of the FAA reads in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. If the presence of an arbitration agreement between the parties divested the court of its subject matter jurisdiction, the Court would have no power to stay the case and would be required to dismiss it instead. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Olympus Am., Inc. v. Cintas Corp. No. 2*, No. 20-3428, 2021 WL 1248523, at *2 (D.N.J. Apr. 5, 2021). Further, Section 4 of the FAA states that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. This language suggests that a court at least "retains jurisdiction to determine the threshold question of whether there is a valid arbitration agreement between the parties." *Laudano v. Credit One Bank*, No. 15-7668, 2016 WL 3450817, at *5 n. 5 (D.N.J. June 22, 2016).[3]

---

[3] Indeed, when faced with similar motions under Rule 12(b)(1) or Rule 12(b)(6), other courts in our District concluded that the 12(b)(6) standard was proper, citing to Section 4 of the FAA. *Laudano*, 2016 WL 3450817, at *5 n. 5 (noting that under Section 4 of the FAA, the court at least "retains jurisdiction to determine the threshold question of whether there is a valid arbitration agreement between the parties"); *see also Olympus Am., Inc.*, 2021 WL 1248523, at *4 (stating that Section 4 "is conceptually the same as enforcing the contractual provision and is an exercise of judicial power that is incompatible with a finding that the Court lack subject matter jurisdiction").

Accordingly, given the lack of clear authority on this issue, the Court "is of the view that the better course is to address [Defendants'] motion under Rule 12(b)(6)" rather than under Rule 12(b)(1).[4] *Olympus Am., Inc.*, 2021 WL 1248523, at *3. The Court now turns to Defendants' motion to compel arbitration pursuant to Rule 12(b)(6).

### B.     Rule 12(b)(6)

Defendants argue that the claims of Sunkins, Hall, and Oguekwe can be properly dismissed under Rule 12(b)(6) because the Arbitration Agreements prohibit them from pursuing their claims in Court. (Mov. Br. at 18). Defendants assert that the Arbitration Agreements can be properly considered under Rule 12(b)(6) because (i) the agreements were already before Magistrate Judge Hammer, and thus Plaintiffs "have already acknowledged . . . the authenticity of those documents" by failing to challenge them in reply and (ii) because Plaintiffs' allegations, by necessity, rely on the agreements that govern the terms and conditions of Plaintiffs' employment, including the Arbitration Agreements. (Mov. Br. at 18). In response, Plaintiffs argue that resolution of the motion under Rule 12(b)(6) is inappropriate because "the Complaint says nothing about arbitration or the arbitration agreements at issue." (Opp. Br. at 12). As explained below, because (i) the affirmative defense of arbitrability is not apparent on the face of the SAC or documents integral to or relied upon therein, and (ii) Plaintiffs have come forth with additional facts to place their Arbitration Agreements at issue, the Court declines to consider the Motion under Rule 12(b)(6).

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without

---

[4] The parties dispute whether Defendants' Rule 12(b)(1) challenge should be considered a factual or facial attack. (Mov. Br. at 9 & Opp. Br. at 11). Because this Court declines to address Defendants' motion under Rule 12(b)(1), it need not decide whether Defendants' challenge is facial or factual.

discovery's delay.'" *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Further, even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations. *See e.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019). For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the complaint references an agreement that contains the arbitration provision. *See CardioNet, Inc.*, 751 F.3d at 168 n.2.; *George*, 2019 WL 2591163, at *3. In contrast, courts in this District have routinely declined to consider agreements to arbitrate pursuant to Rule 12(b)(6) where the agreement is not directly referenced in the complaint, is not attached to the complaint, and is not integral to or explicitly relied upon in the complaint. *See, e.g.*, *Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019); *Tailor v. Midland Funding, LLC*, No. 218-11320, 2019 WL 494622, at *3 (D.N.J. Feb. 7, 2019), *report and recommendation adopted*, No. 18-11320, 2019 WL 943520 (D.N.J. Feb. 25, 2019).

The Third Circuit has set forth that considering a motion to compel arbitration under Rule 12(b)(6) is inappropriate if (i) "the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or (ii) "if the plaintiff has responded to a motion to compel arbitration

11

with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. In both instances, "the parties should be entitled to discovery on the question of arbitrability." *Id.* (internal quotations omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.*; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

Pursuant to *Guidotti*, the Court looks to the SAC to determine whether there is an "express, unequivocal agreement" to arbitrate. *Guidotti*, 716 F.3d at 773 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Here, Plaintiffs' SAC makes no explicit reference to the Arbitration Agreements, nor are the Arbitration Agreements attached to the SAC as exhibits. (*See generally* SAC). Rather, the Arbitration Agreements were filed for the first time in Defendants' brief opposing Plaintiffs' motion for leave to file the Second Amended Complaint and related attachments. (D.E. No. 60-2, Exs. A, B & C to Pelosi Cert.).

Further, the Arbitration Agreements are not integral to or relied upon in the SAC nor are they incorporated by reference in the SAC. Defendants argue that Plaintiffs' allegations "by necessity, rely on the agreements that govern the terms and conditions of Plaintiffs' employment at [Momentum]" which properly places the Arbitration Agreements before the Court. (Mov. Br. at 18–19). Specifically, Defendants assert that because Sunkins alleges that he was denied thousands of dollars in wages during his employment at Momentum, the SAC implicitly refers to terms of his employment, including his arbitration agreement. (*Id.* at 18 (citing SAC ¶ 8)). Defendants similarly argue that because the SAC alleges that Hall and Oguekwe performed their jobs at Momentum in an adequate manner at the time of their termination, the SAC implicitly

12

refers to the terms of their employment, including their arbitration agreements. (*Id.* at 18–19 (citing SAC ¶¶ 81, 82, 95 & 97)). For the following reasons, the Court disagrees.

Here, Plaintiffs' claims do not arise under the Arbitration Agreements. Nor do Plaintiffs' allegations "turn on the 'terms and conditions' of the Agreement . . . that [] contains the subject arbitration provision." *See George*, 2019 WL 2591163, at *3. Rather, Plaintiffs' claims stem from Defendants' alleged discrimination and retaliation in violation of § 1981, Title VII, and NJLAD. *See Hubbard*, 2019 WL 2866067, at *2 (declining to apply Rule 12(b)(6) where the complaint neither referenced the arbitration agreement nor attached it as an exhibit to the complaint and finding that plaintiffs' NJLAD claim did not stem from the existence of an arbitration agreement).

Similarly, the SAC never mentions, much less discusses Sunkins, Hall, or Oguekwe's Arbitration Agreements, or any documents that contain or incorporate the Arbitration Agreements. (*See generally* SAC). Even if the SAC does reference terms of Plaintiffs' employment, as Defendants argue, it does not reference the Arbitration Agreements purportedly entered into by Sunkins, Hall, and Oguekwe. At most, by mentioning that Sunkins was denied wages and that Hall and Oguekwe were performing their jobs adequately, the pleading references the employment terms that governed (i) Sunkins' wages at Momentum and (ii) Hall's and Oguekwe's job responsibilities at Momentum. Defendants do not argue that these terms are synonymous to or incorporated their Arbitration Agreements. (*See* Mov. Br. at 18–19). In fact, Defendants describe the Arbitration Agreements as "stand-alone documents." (*Id.* at 26). Further, those employment terms are not before this Court, such that it could evaluate whether they were synonymous to or incorporated the Arbitration Agreements. Consequently, the SAC's references to Sunkins's wages and Hall's and Oguekwe's job performances are insufficient to incorporate the Arbitration Agreements into the SAC by reference. Therefore, because "the affirmative defense of

13

arbitrability" is not apparent on the face of the SAC, the application of Rule 12(b)(6) is inappropriate. *See Horton v. FedChoice Fed. Credit Union*, 688 F. App'x 153, 157 (3d Cir. 2017).

In addition, Defendants argue that the Court can consider the Arbitration Agreements because they were already before Magistrate Judge Hammer, and thus Plaintiffs "have already acknowledged . . . the authenticity of those documents" by failing to challenge them in reply. (Mov. Br. at 18 & 20). However, the Court can only consider "undisputedly authentic documents *if the complainant's claims are based upon th[o]se documents*." *Mayer*, 605 F.3d at 230 (emphasis added). As discussed above, a plain reading of the SAC makes clear that Plaintiffs' § 1981, Title VII, and NJLAD claims are not based upon the Arbitration Agreements. Therefore, Defendants' argument is unavailing.

Finally, Plaintiffs raise facts that place the Arbitration Agreements at issue. Plaintiffs "challenge the circumstances surrounding the formation of the [A]rbitration [A]greement[s] as improper, coercive and unconscionable given the vast inequities in the bargaining power between the respective parties" and because Sunkins, Hall, and Oguekwe are "vulnerable due to their lack of relevant education [and] sophistication." (Opp. Br. at 26). In support, Plaintiffs attach the Declarations of Oguekwe, Sunkins, and Hall as exhibits to their opposition, which state that they felt coerced into signing the Arbitration Agreements and did not have sufficient time to review the Agreements before signing them. (D.E. No. 78-1, Exhibit 1 to D.E. No. 78 ("Willemin Decl.") ¶¶ 5–6; D.E. No. 78-2, Exhibit 2 to Willemin Decl. ¶¶ 5–6; D.E. No. 78-3, Exhibit 3 to Willemin Decl. ¶¶ 5–6). In Reply, Defendants argue that these declarations constitute "a last ditch effort to create questions of fact where none exist" and are "designed to give the impression that [Sunkins, Hall, and Oguekwe] signed the Arbitration Agreements under conditions that should make them unenforceable." (Reply at 7–8). Here, Plaintiffs' "evidence amounts to more than a 'mere naked

14

assertion' that the arbitration clauses should not be binding on Plaintiffs." *Terra Fin., LLC v. Acrow Corp. of Am.*, No. 16-0075, 2017 WL 499673, at *2 (D.N.J. Feb. 7, 2017). Therefore, evaluating the motion under Rule 56, rather than 12(b)(6), is proper. Accordingly, the Court will not evaluate Defendants' Motion pursuant to Rule 12(b)(6). *See Guidotti*, 716 F.3d at 776.

### C. Rule 56 and Limited Discovery

Defendants maintain that in the event the Court declines to apply Rule 12, it should decide the Motion under Rule 56 without further discovery. (Mov. Br. at 11 & 19–20). Plaintiffs contend that there are significant questions of fact regarding the enforceability of their Arbitration Agreements that require additional discovery. (Opp. Br. at 26).

Since *Guidotti*, courts routinely deny motions to compel arbitration and allow limited discovery where the complaint is unclear regarding the parties' agreement to arbitrate, and the asserted claims do not arise under the parties' arbitration agreement at issue. *See, e.g.*, *Ackies v. Scopely, Inc.*, No. 19-19247, 2020 WL 5757988, at *4 (D.N.J. Sept. 28, 2020); *Hubbard*, 2019 WL 2866067, at *2, n.1; *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017); *Nicasio v. Law Offs. of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016).

Further, the Court is mindful of the fact that "'[a] party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement which contained an arbitration clause.'" *Shri Lakshmi Cotsyn Ltd. v. Textile Décor USA, Inc.*, No. 12-1605, 2015 WL 13640505, at *3 (D.N.J. Mar. 31, 2015) (quoting *Par-Knit Mills, Inc.*, 636 F.2d at 54). "A 'naked assertion' by a party 'that it did not intend to be bound' by an arbitration clause is insufficient to establish a genuine issue of material fact.'" *Id.* (quoting *Par-Knit Mills*, 636 F.2d at 54). At the same time,

15

there may be legitimate disputes over an alleged agreement to arbitrate and limited discovery is appropriate where, as here, the "parties have come forth with facts that put the formation of the arbitration agreement at issue," such as whether coercive tactics were employed, the sophistication of plaintiffs, and whether there was a disparity in bargaining power. *Maity v. Tata Consultancy Servs., Ltd.*, No. 19-19861, 2020 WL 6268683, at *2 (D.N.J. Oct. 26, 2020); (Opp. Br. at 26).

Accordingly, limited discovery on the issue of arbitrability is appropriate because the Motion requires this Court to examine documents extraneous to the pleading and because the Plaintiffs have put the formation of the Arbitration Agreements at issue. After the necessary discovery is complete, Defendants may renew their arbitrability arguments in a motion for summary judgment pursuant to Rule 56.[5]

### D. Request to Stay Discovery and Pleadings

Finally, Defendants argue that should the Court determine the Motion requires resolution as a Rule 56 Motion with the need for discovery on the issue of arbitrability, the Court should stay all other discovery and pleadings pending its decision on the Motion. (Mov. Br. at 30). Plaintiffs also ask the Court to stay discovery pending a decision on the Motion. (Opp. Br. at 28).

A party must show good cause to obtain a stay. *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009)); Fed. R. Civ. P. 26(c). Courts consider a number of factors when determining whether a request to stay is appropriate, including "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether

---

[5] Plaintiffs also argue that instead of moving to dismiss, Defendants should have moved to stay this matter pending arbitration pursuant to the FAA. (Opp. Br. at 12 (citing 9 U.S.C. § 3)). Because the Court denies the Motion without prejudice pending limited discovery on the issue of arbitrability, the Court does not address this argument.

16

discovery is complete and/or a trial date has been set." *Actelion Pharms. Ltd. v. Apotex Inc.*, No. 12-5743, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013) (internal quotations omitted). Courts generally do not favor granting motions to stay discovery "because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Coyle,* 2009 WL 1652399, at *3 (internal quotations omitted).

When Venson notified the Court that he would seek leave to add putative class representatives to this action, the Court agreed to extend fact discovery for 90 days after the additional plaintiffs were added. (D.E. Nos. 53 & 54). Consequently, discovery with respect to the newly added plaintiffs has been ongoing since the SAC was filed on November 30, 2021. Magistrate Judge Hammer has made clear to the parties on multiple occasions that discovery would not be stayed in this matter. (D.E. Nos. 84 & 110). The fact discovery deadline for the newly added plaintiffs is currently set to end on December 9, 2022, with expert discovery set to conclude on March 20, 2023. (D.E. No. 110).

The balance of the factors weighs against a stay of discovery. First, prejudice to the nonmoving party does not weigh heavily in the Court's analysis because Plaintiffs make the same request. (*See* Opp. Br. at 28). Second, fact discovery is nearly complete and has been ongoing with respect to the newly added putative class members for nearly a year. (D.E. No. 110). Thus, denying a stay would not create a clear case of hardship for Defendants. Third, granting a stay when fact discovery is nearly complete and has been ongoing for almost a year would not simplify the issues and trial of the case but would rather create case management problems and unnecessary delay. *See Coyle,* 2009 WL 1652399, at *3. Fourth, discovery in this matter is nearly complete. (D.E. No. 110). Accordingly, the Court declines to stay discovery.

For the same reasons, the Court declines Defendants' request to stay the pleadings. Since Plaintiffs have not opposed the request to stay the pleadings, the first factor does not weigh heavily in the Court's analysis. On the one hand, the Court finds that denying a stay of the pleadings could create a hardship for Defendants, because they would be required to file a responsive pleading with respect to the claims of Sunkins, Hall, and Oguekwe regardless of whether those plaintiffs' claims proceed to arbitration. However, staying the pleadings altogether will not simplify the trial of the case, but will rather unnecessarily delay its progression with respect to the claims of Venson and Winfrey, who Defendants do not contend are subject to arbitration. Alternatively, if the Court were to stay the pleadings as to Sunkins, Hall, and Oguekwe only, Defendants would still be required to file a responsive pleading as to Venson and Winfrey. This could potentially require Defendants to file multiple answers for allegations that are overlapping—which would burden both the Defendants and the Court. Thus, the third factor weighs against a stay. The fourth factor also weighs against a stay of the pleadings because discovery is nearly complete. Accordingly, on balance, the Court declines Defendants' request to stay the pleadings.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion is **DENIED,** without prejudice to their ability to renew their arbitrability arguments in a motion for summary judgment pursuant to Rule 56, pending limited fact discovery on the issue of arbitrability. Defendants may file a renewed motion to compel arbitration under Rule 56 within thirty days of the close of discovery. Defendants' and Plaintiffs' requests to stay discovery are **DENIED** and Defendants' request to stay the pleadings is **DENIED.** An appropriate Order accompanies this Opinion.

**Dated:** September 30, 2022                                         */s/ Esther Salas*
                                                                                    **Esther Salas, U.S.D.J.**